## DICKEY v. DICKEY.

No. 7972—Opinion Filed Nov. 20, 1917.

(168 Pac. 1018.)

**1. Wills—Testamentary Capacity.**

When the testator, in making a will, understands the nature and consequence of his acts and is free from duress, menace, fraud, and undue influence, he has testamentary capacity.

**2. Wills—Execution—Soundness of Mind—Burden of Proof.**

The proponent of a will must make the preliminary proof required by statute as to the execution of the will and the soundness of mind of the testator, whereupon, in case of a contest, the burden shifts to the contestant to prove the matters set forth in the objections filed.

**3. Wills—Testamentary Capacity—Appeal.**

Where the evidence reasonably supports a finding of testamentary capacity, the same will not be disturbed on appeal.

**4. Same.**

Facts in the instant case as stated in the opinion examined, and found to support the judgment of the trial court admitting the will to probate.

(Syllabus by Stewart, C.)

Error from District Court, Cherokee County; John H. Pitchford, Judge.

The contestant, Mrs. J. M. Dickey, objected to probate of the will of J. E. Dickey, deceased, offered by proponent, Maude Dickey. The will, being admitted to probate by the county court, contestant appealed and, from an adverse judgment of the district court, contestant brings error. Judgment admitting the will to probate affirmed.

W. P. Harris, for plaintiff in error.

Bruce L. Keenan, for defendant in error.

Opinion by STEWART, C. J. E. Dickey died without issue leaving as his only heirs at law the proponent, Maude Dickey, she being his surviving wife, and the contestant, Mrs. J. M. Dickey, his mother. The proponent having offered for probate an instrument purporting to be the last will and testament of the deceased, the contestant filed objections to the probate thereof on the following grounds: First, incompetency of the testator; second, undue influence on the part of the proponent; third, want of due execution and attestation.

There is not even the slightest foundation shown by the record to support the second and third grounds, and very slight testimony tending to sustain the first. Death of the testator came at about 2:30 a. m. December 23, 1914, from peritonitis resulting from an intestinal puncture and as the culmination of an attack of typhoid fever. At 8 a. m. on the previous day, the condition of the deceased became more critical than usual, and his attending physician and other physicians were called, who, after examination, informed the deceased and his relatives, including his wife, mother and brothers, that there was slight, if any, hope for recovery. He expressed a desire for a lawyer in order to make his will, and said, according to the testimony, that he desired to leave his property in the East to his mother and brothers and

his Oklahoma property to his wife. His attorney was called, and a will was prepared, devising his money, personal property, and estate in Cherokee county, Okla., to Maude Dickey, his wife, and all of the property in which he might have an interest in North Carolina, and particularly any interest in the estates of G. W. Dickey, and J. M. Dickey, deceased, to his mother and brothers. The evidence also shows that G. W. Dickey and J. M. Dickey were his grandfather and father, respectively, who had died leaving property, some of which was yet in the family, concerning his interest in which the testator was in doubt, and that he had previously made a deed to his mother, attempting to convey the whole or some part of his interest in the property coming from such deceased ancestors. There is no evidence that his wife ever mentioned the matter of the will to him, but there is evidence that the contestant manifested considerable interest in the execution of the will at the time same was made, advising the lawyer as to details to be placed therein, and that, after the first draft of the will, at her suggestion, another draft was made, more particularly describing the property left to her and her sons. The will, as at last drafted, was read to the testator and fully approved by him before he signed the same. It appears on its face to be duly executed and attested, and there is no evidence to the contrary.

Dr. J. S. Allison, the attending physician, was one of the attesting witnesses, and testified in support of the probate thereof. The other attesting witness, B. F. King, was out of the county, being in the city of Chicago. His absence was satisfactorily accounted for to the court, and proof of his handwriting and that of the testator was furnished, and many witnesses offered to prove the sanity of the testator and the execution of the will. Dr. J. S. Allison testified that the mind of the deceased had never been affected in the least by his sickness, and that it was unusually clear at the time of executing the will, having been so both before and after signing the will; that the will was executed between 1:30 and 2:30 p. m. on the day before the death. He was fully corroborated by the attending nurse, by his brother, Dr. Thomas P. Allison, by Lee Bates, a hired man of the deceased, and by Rev. D. C. Gambrell, a minister of the gospel, whom the trial judge in summing up the court's findings described as a man of the highest character and strictest piety.

Dr. W. G. Blake was offered by the contestant, whose testimony is of small value for either side, and is really in favor of the proponent. He examined the deceased when he was resting and had no chance to testify as to his sanity, but says that his circulation and heart action were plain.

The other witnesses for the contestant were W. G. Dickey, brother of the deceased and the contestant, herself. They do not testify that the deceased was not sane, but say that, throughout the day, he was at times in a stupor, and his mind wandered. That he was in a stupor is denied by the nurse and other witnesses. Judge Keenan, who wrote the will testifies that his mind was rational and clear.

Counsel for the contestant make the rather novel and unusual argument that Judge Keenan obtained most of his information in preparing the will from Mrs. J. M. Dickey, the contestant, and that the beneficiaries were suggested by her, and not by the testator, a matter which cannot affect any other person having a right to object except the proponent; the contestant and the proponent are the only heirs at law, and the contestant herself can ill complain.

It is also suggested that the testator's sister was not mentioned in the will. This is hardly material from any standpoint, as in this case the sister is not an heir and has no standing as a claimant. Nor does the failure to name her in the will show lack of mental capacity. Such omissions are common. The contestant does not appear to have had the same solicitude for the sister when the will was made.

It is urged as bearing upon the mental condition of the deceased that he told his lawyer that he thought there ought to be two wills, one disposing of the Oklahoma property and the other, the Eastern property, and that when he was informed by his lawyer that all of the property should be disposed of in one will, he agreed to the suggestion. Any lawyer who has had experience in matters of this kind will bear testimony to the fact that the notion of making separate wills to dispose of property in different states is not unusual among laymen not skilled in the law and does not signify in the least lack of mental acumen. The Oklahoma property appears now to be the bone of the contention, and such suggestion made by the testator tends to show that it was his desire for such property to go to his wife and the other property to the other kindred named as by the will directed.

It is further urged that the testimony shows that he had made disposition by deed long before making the will of all his

interest in the Eastern property to his mother, and that the mention of such property in the will tends to show incapacity on the part of the testator. The deed introduced was indefinite and vague in its terms, and it is not possible to arrive at the intent of the grantor from the face of the deed. It would appear that the testator desired to remove all doubt as to whom his ancestral interests would go, and there is evidence to show that, at the time of making the will, the contestant, who did not know the value of the Oklahoma property, was anxious that the decedent's inherited interests should be correctly set out in the will. There is nothing in the testamentary disposition of such interests that implies lack of understanding on the part of the testator, but his desire to separate the interests rather shows care and foresight on his part.

Lastly counsel for contestant urges that the court erred in sustaining an objection to the following questions propounded to the contestant in the trial of the contest:

"Mrs. Dickey, is that all the property that your son ever claimed in North Carolina?"

The question is leading, and, if answered in the affirmative, would have little or no value so far as the issues are concerned. If sustaining the objection could be said to partake of error, it was certainly harmless.

The sole question in the instant case for us to determine relates to the competency of the testator at the time of executing the will —his testamentary capacity or incapacity. This court holds in Bilby v. Stewart, 55 Okla. 767, 153 Pac. 1173, that:

"Where the evidence fairly and reasonably supports the finding of testamentary incapacity, the same will not be disturbed on appeal."

As much, of course, could be said when the evidence fairly and reasonably supports the finding of testamentary capacity.

The syllabus of the opinion last quoted defines testamentary capacity as follows:

"Ordinarily the test of testamentary capacity is the testator's capacity to understand the effect and consequence of his act at the time the will is executed."

We think that when the testator understands the nature and consequences of his acts and is free from duress, menace, fraud, and undue influence, he may be said to have testamentary capacity.

It is said by Commissioner Mathews in the syllabus in Re Blackfeather's Estate, 54 Okla. 1, 153 Pac. 839:

"A presumption of sanity goes with every one, and the burden of proving soundness of mind in a will contest rests upon the contestant."

In that case it is also held that the courts will not review the disposition of property from the fact alone that such disposition was unreasonable, harsh or unjust. It is provided by section 6210, R. L. 1910, that on the trial of a will contest, the contestant is plaintiff and the petitioner is defendant, from which it must be assumed that the burden of proof is upon the contestant. Of course the petitioner must make the preliminary proof required by statute as to the execution of the will and the soundness of mind of the testator, whereupon, in case of a contest, the burden shifts to the contestant to prove the matters set forth in the objections filed, including soundness of mind and testamentary capacity in case the same is in issue. If, however, the burden were on the petitioner, the record in this case justifies us in saying that the proponent has more than assumed and met the same. The overwhelming weight of the evidence is that the testator was sane and his mind clear. There is no evidence whatever of duress, menace, fraud, or undue influence. The will, without ground for dispute, was duly executed and attested, and it is clear that, at the time of its execution, the testator had the capacity to understand the effect and consequences of his act.

The contestant and her son, G. W. Dickey, were both present during the last sickness of the deceased, took part in the transactions attending the making of the will, and were furnished with copies before the signing of the same, the contestant telling the testator it was all right. She ought not to have filed her objections in court.

The judgment admitting the will to probate is affirmed, the costs of the contest and of the appeal to be taxed against the contestant.

By the Court: It is so ordered.