## In re ESTATE OF TAYRIEN.
### TAYRIEN et al. v. TAYRIEN et al.

No. 16574—Opinion Filed April 27, 1926.

**1. Wills—Request to Attesting Witnesses—Form.**

Upon the execution of a will no particular form of language is necessary to constitute the request to attesting witnesses.

**2. Wills—Execution—Substantial Compliance With Statutes.**

A substantial compliance with the statutes with reference to the execution of a will, is all that is required.

**3. Wills—Test of Testamentary Capacity—Ability to Transact Business.**

The ability to transact business is not

a true test of testamentary capacity. The testator may have capacity to make a will although not able to make contracts or manage his estate. He may not have sufficient mind and vigor of intellect to transact business generally, and to make and digest all the parts of a contract, and yet be competent to direct the disposition of his property by will. The question is whether the testator's mind is sufficiently sound to enable him to understand the business in which he is engaged at the time of the execution of the will, and to bear in mind the property which he bequeaths to the objects of his bounty, and to know its scheme and distribution.

4. **Same—Finding of Testamentary Capacity—Conclusiveness on Appeal.**

Where the trial court finds that the testator was possessed of testamentary capacity, the same will not be disturbed on appeal, unless against the clear weight of the evidence.

(Syllabus by Jones, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Osage County; Jesse J. Worten, Judge.

Proceedings by Emma S. Tayrien et al., opposed by Charles Tayrien et al.; to probate the will of Cyprian Tayrien, deceased. From judgment upholding the will, contestants bring error. Affirmed.

McQuire & Marshall, for contestants.

T. J. Leahy and C. S. McDonald, for defendants in error.

Opinion by JONES, C. This appeal is from a judgment of the district court of Osage county upholding the will of Cyrian Tayrien, under the terms of which all of the property of the testator was bequeathed to his wife, Emma S. Tayrien. The will in question was executed on the 19th day of September, 1922, and the testator died October 16, 1922, at the age of about 85 years.

Cyprian Tayrien was an Osage Indian, and it appears from the record that his will, by reason of this fact, was submitted to the Secretary of the Interior for approval and that the contestants here appeared before the Interior Department and contested the will, and likewise appeared when same was offered for probate in the county court of Osage county, and entered a protest. The will being admitted to probate in the county court, contestants appealed to the district court, and there again their contentions were overruled, and the judgment of the county court was upheld, and the will declared to be the last will and testament of

the said Cyprian Tayrien; that same was duly executed according to law, and that the testator, Cyprian Tayrien, was possessed of testamentary capacity at the time of its execution, and from this judgment the contestants prosecute this appeal.

Numerous errors are set forth in the assignment of error, but, as we gather from the brief of appellants, the only question here urged is the insufficiency of the evidence to sustain the findings of the court on the question of the proper execution of the will, and the testamentary capacity of the testator at the time of the execution of same.

The facts, as disclosed by the record, show that on the day of the execution of the will, Emma S. Tayrien, wife of the testator, requested her son, John Tayrien, to procure a lawyer to come to the home of the testator for the purpose of preparing the will, and in response thereto, the said John Tayrien went to Bartlesville, a distance of about 2½ miles, and obtained the services of Mr. Ray, an attorney of Bartlesville, who immediately drove out to the home of the testator, Cyprian Tayrien, and who acquired necessary data, and ascertained from the testator, Cyprian Tayrien, that it was his will and desire to bequeath to his wife, Emma S. Tayrien, all of his property, and gave as a reason for willing all of his property to his wife, that his children were all provided for by reason of the fact that they were enrolled members of the Osage Tribe of Indians, and that his wife, being a white woman, never having been admitted as a citizen of the Osage Tribe of Indians, had no property, and that it was his desire that she take all of his property at his death, and pursuant thereto, the attorney, Mr. Ray, returned to Bartlesville and prepared the will as he had been directed by the testator, and aside from the provisions contained in the will as directed by the testator, the attorney, Mr. Ray, included in the will a provision to the effect that the testator's omission to give any property to his children was intentional and not the result of an oversight. The attorney, Ray, on his first visit to the home of the testator, advised John Tayrien, the son of the testator, that it would be necessary to have two disinterested witnesses attest the execution of the will, and that he should secure someone to act in that capacity, and advised the said John Tayrien that he, Ray, would go to Bartesville, prepare the will, and return to the home of the testator in a short time. The said John

Tayrien, pursuant to this conversation and direction, notified Evan Jones and P. W. Rockwood, who seem to·have been the nearest neighbors of the testator, that his father, Cyprian Tayrien, was going to execute his will, and that their presence was desired at the home of his father, ·:or the purpose of witnessing the execution of same, and in response to this invitation the said Jones and Rockwood went to the home of Cyprian Tayrien, and were present when the will was executed, and signed the same as attesting witnesses.

The record further discloses that Cyprian Tayrien had fallen some six or seven years prior to the execution of his will, and broken his thigh, from which injury he never recovered. and that he had been confined to his home at all times since sustaining the injury as aforesaid, and that on account of his advanced years, was very weak and feeble, his eyesight was very bad, likewise his hearing, and that he suffered other physical ailments, and had been under the immediate care of physicians a great deal of the time during the last six or seven years of his life. The record further discloses that he had been married three times and had children living by each of his wives; that he was married to his widow, Emma S. Tayrien, in 1880, and that the marital relations were sustained until his death in 1922.

Appellees insist that the appeal in this case should be dismissed for the reason that the motion for new trial was not filed in time, and that this court has no jurisdiction to entertain same; however, the record discloses that this matter has heretofore been passed on and the motion to dismiss denied, hence, we give this phase of the case no further consideration. Appellees also complain of the failure of appellants to comply with rule 26 of the Supreme Court, and while we find some merit in this contention. we feel that under the liberal construction placed on the rule in question by this court, we are justified in disposing of the case upon its merits.

As heretofore stated, various specifications of error are assigned, but, under the condition of the record as presented. the only question for our determination is the sufficiency of the evidence, which is raised by the 6th assignment of error of appellants to the effect:

"That the court erred in entering its judgment or decree admitting the instrument purporting to be the last will and testament of Cyprian Tayrien, deceased, to probate, for the reason that the said instrument was not signed by the witnesses at the request of the testator, and neither was the said will signed by the witnesses in the presence of the.testator," etc.

And the further question of the sufficiency of the evidence to establish testamentary capacity on the part of the testator at the time of the execution of the will is urged. The first question raised we think has been decided adversely to appellants' contention by this court in the opinions of In re Ballard's Estate, 56 Okla. 149, 155 Pac. 894, Speaks et al. v. Speaks, 98 Okla. 57, 224 Pac. 533, and the case of In re Thomason's Estate, 115 Okla.`62, 241 Pac. 739, in which latter case there is a citation from Underhill on Wills, as follows:

"No particular form of language is necessary to constitute the request to attesting witnesses," etc.

And in the case of Allen v. Kinnibrugh, 93 Okla. 42, 219 Pac. 676, we find the following statement:

"The testatrix then signed the will in the presence of Mr. Harris and Dr. Gillis, and at her request Mr. Harris and Dr. Gillis signed the will as witnesses in her presence and in the presence of each other. It is true that the testatrix did not, in direct terms. state to the attesting witnesses that this instrument was her will, but it is clear that the testatrix, by her acts and conduct, fully conveyed to the witnesses the information that this instrument was intended as her last will and testament, and that is sufficient."

Following the rule announced in Re Silva's Estate (Cal.) 145 Pac. 1015, and in the Speaks Case, supra, no express declaration was made by the testator, but upon being asked by the scrivener, who had prepared the will, if it was his will, and if he desired the witnesses present to attest same, he merely made the exclamation, "Uh-uh," and this together with all the other surrounding circumstances was declared to be a sufficient request.

In the instant case the wife of the testator requested her son to secure the services of an attorney to draw the will. This was done. The attorney appeared at the home of the testator and was advised by the testator that he desired to make his will, and wanted to give all of his property to his wife. The will was accordingly drawn, and pursuant to the attorney's instructions, he knowing the law and the manner in which wills should be executed, disinterested witnesses were obtained and caused ·to· be present in the home of the

testator when the will was executed. The will was read to the testator by the attorney in the presence of the attesting witnesses, the wife, and possibly other members of the family, and when the testator was asked if that was all right, or words to that effect, he said that it was, and while the testator made no direct and express request of the attesting witnesses, the necessity of attesting witnesses was called to his attention, and it was clear to all who were present that the instrument was his will, and that he desired that the same be executed according to law, and had secured the services of an attorney for no other reason than that his will should be properly and legally executed. The record discloses that after the attorney, Ray, had read the will to the testator, and in the presence of the attesting witnesses, the attorney, Mr. Ray, called the attention of Mr. Tayrien to the fact that Mr. Jones and Mr. Rockwood were present, and inquired if it would be all right for them to sign as witnesses, and the testator said "that it would, that was what he wanted." So we are inclined to the opinion, under the authorities here cited, that the manner of excution was substantially as provided by law, and this court has recently held in the case of In re Chopper's Estate, 112 Okla. 25, 239 Pac. 592, that:

"A nonholographic will will be admitted to probate where the proponents thereof establish, by a fair preponderance of the evidence, that the will was executed and published in substantial compliance with the provisions of the statute."

Hence, we find no merit in appellants' contention in so far as the manner of the execution of the will is concerned.

The next question for our consideration is, Did the testator possess testamentary capacity at the time of the execution of the will? A vast volume of conflicting evidence is offered on this point; however, we have carefully considered the evidence offered, and the record contains no evidence of duress or improper conduct, or methods used by the direct beneficiary of the will, or of those who might be indirect beneficiaries. There is nothing to indicate that the wife, Emma Tayrien, was instrumental in any manner in securing her husband, Cyprian Tayrien, to execute the will in the manner in which he did. If she exercised any influence over him, it was evidently the result of her fidelity to him as a wife for more than 40 years, and flowed from natural and highly commendable causes and impulse on the part of the husband, and

the fact that all of his children were adults and members of the most wealthy tribe of Indians in the world, was the reason given by him for bequeathing all of his property to his wife, who was a noncitizen, and we think a good reason and perfectly natural, and aside from these circumstances, there is ample evidence in the record to support the approval of the Secretary of the Interior, the judgment of the county court, and the judgment of the district court, in approving and admitting the will in question to probate. It is true that the testator, Cyprian Tayrien, was very old and feeble, weak in body and mind, but the evidence offered tending to establish the fact that he was not possessed of testamentary capacity, in our judgment, wholly fails. His attorney, his banker, and a majority of the doctors who testified in the case, and his neighbors, all agree that he was possessed of testamentary capacity, that he was not controlled by any external influence in the execution of his will, that he knew what he wanted to do with his property, and knew the effect of his will; that he gave his reason for the execution of his will in the manner in which he executed it, and knew the legal effect of the same, and in our judgment there is very little evidence, if any, that contradicts the above facts.

In the case of Exendine v. Red Corn, 108 Okla. 1, 232 Pac. 46, this court announces the rule as follows:

"The question of mental capacity to make a will is a question of fact, and is to be determined from the condition of the testator's mind at the time of the making of the will; and in determining the mental status of a testator the presumption of sanity will be indulged, and where a will appears to be a rational act performed in a rational manner, such presumption and such apparently rational act amounts to evidence of testamentary capacity; and in determining the mental status of a testator in a will contest, the question to determine is, 'Did the testator possess testamentary capacity at the time of the making of the will?' Prior and subsequent acts have bearing only to the extent of helping to determine the mental status at the time of the execution of the will."

And in the case of In re Blackfeather's Estate, 54 Okla. 1, 153 Pac. 839, this court held:

"A presumption of sanity goes with every one, and the burden of proving unsoundness of mind in a will contest rests upon the contestant," and "The fact that the testator was an aged person in no way operates

against the validity of the will, but every presumption tends to uphold its validity."

In Alexander on Wills, vol. 1, section 332, the rule is announced as follows:

"The ability to transact business is not a true test of testamentary capacity. .The testator may have capacity to make a will, although not able to make contracts or manage his estate. He may not have sufficient mind and vigor of intellect to transact business generally, and to make and digest all the parts of a contract, and yet be competent to direct the disposition of his property by will. The question is whether the testator's mind is sufficiently sound to enable him to understand the business in which he is engaged at the time of the execution of the will, and to bear in mind the property which he bequeaths to the objects of his bounty, and to know its scheme and distribution."

And the rule is well stated in the case of Sawyer v. White, 122 Fed. 223, as follows:

"But the question of his mental capacity is not whether or not the powers of his mind were impaired, or whether or not he had ordinary capacity to do business, but whether or not he had any—the smallest— capacity to understand what he was doing, and to determine intelligently whether or not he would do it. * * * Any other test would wrest from the feeble and the aged that power over their earnings and savings which is their best safeguard against misfortune, and would produce endless uncertainty, difficulty, and litigation."

Many other authorities might be cited supporting the opinion, but we deem it unnecessary, and following the well-established rule of this court, that the judgment of the trial court will not be set aside in cases of this character unless found to be against the clear weight of the evidence, we hold that the judgment of the court should be and the same is hereby affirmed.

By the Court: It is so ordered.

Note.—See under (1) 40 Cyc. p. 1115; 28 R. C. L. p. 127. (2) 40 Cyc. p. 1097. (3) 40 Cyc. pp. 1004, 1007: anno. 27 L. R. A. (N. S.) 49; L. R. A. 1915A, 444; 28 R. C. L. pp. 86-88; 4 R. C. L. Supp. p. 1799. (4) 40 Cyc. p. 1358; 2 R. C. L. p. 202; 1 R. C. L. Supp. p. 442; 4 R. C. L. Supp. p. 91; 5 R. C. L. Supp. p. 81.