**In re NITEY'S ESTATE.**

No. 23157.   Dec. 24, 1935.

A. M. Fowler, V. R. Biggers, and S. W. Biggers, for plaintiffs in error.

D. B. Buell and Warren & Warren, for defendants in error.

PHELPS, J.   This case presents a contest over a will.   The plaintiffs in error were the contestants and the defendants in error were the proponents of the will.   The parties will be referred to herein as contestants and proponents.

On June 1, 1930, Nitey, a duly enrolled, full-blood Seminole Indian woman, owning valuable oil lands and a large amount of cash and securities held by the Superintendent of the Five Civilized Tribes, executed a will by the terms of which all of her estate was devised to a trustee for a period of ten years for the benefit of her sister and five sons—her only children—on termination of which the estate should pass to the said sons or the issue of any deceased son.

On August 17, 1930, Nitey died.   Shortly thereafter the trust officer for the First

National Bank of Holdenville and the four adult sons and the sister of the deceased, trustee and beneficiaries under the will, respectively petitioned the county court of Seminole county for the admission of the will to probate. Subsequently, guardians were appointed for all the sons of the deceased and contest petitions were filed for them by their guardians. The contest petitions presented three grounds:

(1) That Nitey was incompetent to make a will at the time of its making.

(2) That she was under undue influence, menace, and duress.

(3) That the will was not executed and attested as required by law and was void. Trial was had on October 10, 1930, in the county court and probate of the will denied and appeal was perfected by the proponents to the district court of Seminole county.

In the district court the cause came regularly on for hearing de novo. Proponents offered the testimony of a field representative of the Secretary of the Interior, a United States field clerk who acted as a witness, the United States Commissioner who approved the will and was present at its making, two Indian witnesses, the Indian interpreter and the scrivener. They then offered the will and rested. Thereupon the contestants demurred to the evidence for the reasons:

(1) That the evidence conclusively showed that the will was not witnessed as required by law.

(2) There was no proof showing that the maker of the will was of sound mind at the time of its making. The court overruled the demurrer, and contestants saved their exception. Thereupon trial continued, both sides offering a large number of witnesses and much documentary evidence.

Included in the evidence subsequently offered were the petition and order appointing guardian. The pertinent part of the petition is as follows:

"Come now John Hayecha, and Lucy Narcomey, and respectfully represents and show to this Hon. Court that Nitey, Seminole Roll No. 1446, is an incompetent person, that she is a resident of Seminole county. Okla., and has property consisting of both real estate and personal property in Seminole county, Okla.; that the said Nitey owing to her incompetency is unable to manage and conduct her affairs and look after her property properly, manage and look after her said estate."

The order is as follows:

"Now, on this the 1st day of October, 1927, this cause coming on regularly to be heard upon the petition of Lucy Narcomey, John Hayecha, and Willa Camp, the petitioner, Lucy Narcomey, appearing in person and by her attorneys, Criswell, Billingsley & Criswell, and the petitioner, Willie Camp, appearing by his attorney Al G. Nichols, the ward, Nitey, being present in open court, and after hearing the testimony of witnesses who were first duly sworn to give their testimony in open court, the court finds:

"That said Nitey has property within the county of Seminole, state of Oklahoma, and that the said Nitey is an incompetent person not being capable to look after said estate and that it will be to the best interest that a guardian be appointed, and that due notice of the hearing on the petition to appoint a guardian has been given as by law required.

"The court further finds that Lucy Narcomey is a person suitable and qualified to act as such guardian and that by reason of said estate of Nitey being a large estate, that it would be best that there be a coguardian appointed to assist in looking after the estate and affairs of said Nitey, and that James H. Johnson is a suitable and qualified person to act as such coguardian.

"It is, therefore, ordered, adjudged and decreed by this court that Lucy Narcomey and James H. Johnson be appointed as joint guardians for the said Nitey and that each be required to execute a bond as provided by law in the sum of $1,000.

"Done in open court this 1st day of October, 1927.

"J. E. Simpson,
"County Judge."

This guardianship continued until the death of Nitey.

On June 22, 1931, the district court reversed the county court and ordered the will admitted to probate. The findings of fact on the issues involved were as follows:

"The court further finds that the paper propounded for probate herein. as the last will and testament of Nitey, deceased, a full-blood Seminole Indian, Roll No. 1446, was duly executed by the said decedent, said will being executed on the 1st day of June, 1930, in the presence of W. E. Hiskey. Jackson Lowe, Sunday Narcomey, Marie Stamp and Dudley B. Buell, as witnesses thereto and that the said execution in all things complied with the laws of the United States and the laws of the state of Oklahoma pertaining to the execution of wills by full-blood Indians of the Five Civilized Tribes: that at the time of execution, said testator was of full age, of sound mind and memory, and

was not acting under duress, menace, fraud or undue influence, and that the will was executed in all particulars as required by law, and was acknowledged and approved before L. W. Crutcher, United States Commissioner."

The contestants prosecute their appeal to this court, and present the following assignments of error:

(1) The court erred in overruling the demurrer to the evidence of the proponents.

(2) Nitey, having been adjudged an incompetent and being under guardianship at the time of the execution of the will and no evidence having been offered showing a change in her mental condition and a restoration to competency since such adjudication, that any judgment admitting to probate a will executed by Nitey under these conditions is wholly unsupported by any competent evidence.

(3) The judgment is not supported by evidence and is against the clear weight of the evidence.

(4) There was no publication of the will as required by statutes.

(5) The will was not witnessed as required by statute.

We shall consider these in the order presented.

Contestants present their first assignment of error under the following proposition:

"Where the maker of a will is under guardianship at the time of making of said will, said maker having been duly declared an incompetent person by the county court having jurisdiction of the person, this fact raises a presumption of want of mental capacity of the maker of a will and until this presumption is overcome by legal evidence, the will cannot be admitted to probate."

This position of contestants cannot be sustained and is not the law in Oklahoma. Nitey was not adjudicated to be an insane person, and this court has repeatedly held in will cases where the facts of guardianship were similar to the case at bar, that a presumption of want of testamentary capacity does not arise from the fact that the maker of a will may have been under guardianship at the time of the making of the will. In re Wah-kon-tah-he-um-pah's Estate, 109 Okla. 126, 234 P. 210; Lena et al. v. Patterson et al., 113 Okla. 156, 242 P. 238; In re James' Estate, 131 Okla. 142, 268 P. 296; Peace v. Peace et al., 149 Okla. 123, 299 P. 451. This is the settled law of this jurisdiction. Therefore, as no such presumption existed, proponents did not have to offer the evidence demanded by contestants in making their prima facie case.

The fact that Nitey was under guardianship, however, did get into the record as proponents were making their prima facie case. Although no presumption, either of law or fact, arises therefrom, still it is evidence for the consideration of the court in determining the condition of her mind at the time she executed the will. In re Wah-kon-tah-he-um-pah's Estate, 108 Okla. 1, 232 P. 46; Lena et al. v. Patterson et al., 113 Okla. 156, 242 P. 238; In re James' Estate, 131 Okla. 142, 268 P. 296; Peace v. Peace et al., 149 Okla. 123, 299 P. 451. But the presumption that every person is sane (22 C. J. 146; In re Blackfeather's Estate, 54 Okla. 1, 153 P. 839; In re Wah-kon-tah-he-um-pah's Estate, 109 Okla. 126, 234 P. 210; In re Tayrien's Estate, 117 Okla. 216, 246 P. 400; In re Anderson's Estate, 142 Okla. 197, 286 P. 17, 19; Peace v. Peace et al., 149 Okla. 123, 299 P. 451; In re Elrod's Estate, 154 Okla. 84, 6 P. (2d) 676; In re Riddle's Estate, 165 Okla. 248, 25 P. (2d) 763), coupled with the will itself, which appears to be a rational act performed in a rational manner (In re Wah-kon-tah-he-um-pah's Estate, 109 Okla. 126, 234 P. 210; In re Tayrien's Estate, 117 Okla. 216, 246 P. 400; Peace v. Peace et al., 149 Okla. 123, 299 P. 451; In re Riddle's Estate, 165 Okla. 248, 25 P. (2d) 763), supplemented by the testimony of Mr. Smith, field representative of the Secretary of the Interior and the witnesses to the will, clearly established a prima facie case for the proponents.

From a careful examination of the record, we conclude that the proponents in this case made their prima facie case, that they sustained the burden of proof imposed upon them by law with satisfactory and ample evidence and the court committed no error in overruling the demurrer to the evidence.

Proponents in their brief, answering the contention of contestants that the demurrer should have been sustained by the court, also call attention to the fact that contestants did not stand on their demurrer, and urge that if there was not sufficient evidence, to make a prima facie case, which they deny, the deficiency, if any, was supplied later in the trial, and the court therefore could consider all the evidence introduced. This position is well taken. The following cases hold that where the court overrules a demurrer to plaintiff's evidence and thereafter both parties proceed with the trial

392

and introduce further and additional evidence and sufficient evidence is introduced to make out a case for the plaintiff, a judgment for the plaintiff will not be disturbed, although the court may have erroneously overruled the demurrer to plaintiff's evidence: Meyer et al. v. White, 27 Okla. 400, 112 P. 1005; Oklahoma Hospital v. Brown, 87 Okla. 46, 208 P. 785; Bales v. Breedlove et al., 96 Okla. 280, 222 P. 542; Smith v. Cornwell & Chowning Lbr. Co., 101 Okla. 86, 223 P. 154; Stafford et al. v. Bond, 106 Okla. 173, 233 P. 185; Great American Ins. Co. v. Harrington, 127 Okla. 13, 259 P. 582; Burt Corp. et al. v. Crutchfield, 153 Okla. 2, 6 P. (2d) 1055. There was sufficient evidence introduced throughout the trial to sustain the will. Contestants are in no position, therefore, to complain of the action of the court in overruling their demurrer.

Under their second assignment of error, contestants contend that the proponent of a will, executed by a person who had been adjudicated an incompetent, must by competent evidence show a change in the mental condition of the maker since the adjudication, and restoration to competency at the time of the execution of the will. They predicate their position upon section 4983, C. O. S. 1921 (section 9404, O. S. 1931), which reads as follows:

"After his incapacity has been judicially determined, a person of unsound mind can make no conveyance or other contract, nor designate any power, nor waive any right, until his restoration to capacity is judicially determined. But if actually restored to capacity, he may make a will, though his restoration is not thus determined"

—and they urge the following as the correct construction thereof:

"But most certainly it could never have been intended by the Legislature that the judicial determination of incapacity should be entirely disregarded in the matter of the making of a will, and we say that the reasonable interpretation of this statute means that if a will is offered for probate and it is shown to have been executed by a person who has been judicially declared incompetent, that if the proof shows that there has been a change for the better in the mental condition of that party since the adjudication and that that change has been to such an extent that the party at the time of the making of the will has been actually restored to capacity, then the will should be admitted to probate."

This position of the contestants is but an extension of their first proposition and can-

not be sustained. In the first place, they confuse testamentary capacity with business capacity, and in the second place they assume that all persons adjudicated incompetent are in the category of "persons of unsound mind." As to the first, text-writers and the courts have continuously held that the ability to transact business is not a true test of testamentary capacity, that a person may not then have sufficient mind and vigor of intellect to transact business generally and make contracts, yet be competent to make a will. It is not a question of whether he has been adjudicated an incompetent and has a guardian, but it is a question of whether the testator has mental capacity to understand the business in which he is engaged at the time he executed the will, to bear in mind in a general way the nature and situation of his property, to remember the objects of his bounty and to plan or understand its scheme of distribution. If he can meet this test, he possesses testamentary capacity and can execute a will. 68 C. J. 424; Alexander on Wills, vol. 1, sec. 332, p. 444; Gardner on Wills, sec. 81, p. 100; Payton v. Shipley, 80 Okla. 145, 195 P. 125; McClure v. Kerchner, 107 Okla. 28, 229 P. 589; In re Wah-kon-tah-he-um-pah's Estate, 109 Okla. 126, 234 P. 210; In re Tayrein's Estate, 117 Okla. 216, 246 P. 400; In re Sixkiller's Estate, 168 Okla. 302, 32 P. (2d) 936. Or restated in more general terms, if the testator understands the nature and consequences of his acts at the time of the making of the will, he has testamentary capacity. Bilby v. Stewart, 55 Okla. 767, 153 P. 1173; Dickey v. Dickey, 66 Okla. 269, 168 P. 1018; In re Hart's Estate, 106 Okla. 180, 233 P. 227; In re James' Estate, 131 Okla. 142, 268 P. 296; In re Lemaster's Estate, 148 Ok'a. 300, 298 P. 884; Peace v. Peace et al., 149 Okla. 123, 299 P. 451; In re Riddle's Estate, 165 Okla. 248, 25 P. (2d) 763. Contestants' proposition, therefore, resolves itself into a question of fact: Did Nitey, at the time of the execution of the will, possess testamentary capacity? The fact of her adjudication and guardianship is but evidence on this issue of testamentary capacity.

As to the contestants' second assumption, all adjudicated incompetent persons in Oklahoma are not persons of unsound mind. Section 1449, O. O. S. 1921, which is the statute under which Nitey was adjudicated to be an incompetent (Id., sec. 1445, O. S. 1931), recognizes two classes of persons for whom a guardian can be appointed; one, "insane" persons, and the other, persons who

from any cause are "mentally incompetent to manage their property." . Shelby et al. v. Farve et al., 33 Okla. 651, 126 P. 764.

The word "insane" lexically "signifies delirious; deranged in mind, distracted; unsound in mind or intellect." 32 C. J. 613. This is the class contemplated by the statute urged by contestants, viz., sec. 4983, C. O. S. 1921 (sec. 9404, O. S. 1931); by the specific wording of this statute, only persons "of unsound mind" are included, and section 4975, C. O. S. 1921 (sec. 9396, O. S. 1931), which is a part of the same chapter, defines this class as follows:

"Persons of unsound mind, within the meaning of this chapter are idiots, lunatics and imbeciles."

The other class of incompetents, using the language of this court, embraces any person who, "though not insane, is, by reason of old age, disease, weakness of mind, or from any other cause, unable, unassisted, to properly manage and take care of himself or his property, and by reason thereof. would be likely to be deceived or imposed upon by artful or designing persons." Shelby et al. v. Farve et al., 33 Okla. 651, 126 P. 764; Fish v. Deaver, 71 Okla. 177, 176 P. 251.

Now Nitey did not belong to the first class. She was not an insane person; she was not adjudicated to be a person of "unsound mind." From an examination of the petition and order appointing a guardian we find that the only basis for the appointment was Nitey's inability to manage and look after her estate. She was not even found to be "mentally" incompetent. Section 4983, C. O. S. 1921 (sec. 9404, O. S. 1931), therefore, had no application to her case.

We conclude, therefore, that the adjudication that Nitey was an incompetent person to manage her estate was not inconsistent with testamentary capacity; that section 4983, C. O. S. 1921 (section 9404, O. S. 1931), had no application to the facts of her case; and that the proponents were not required to offer evidence showing a change in the mental condition of Nitey from that which obtained at the time of the adjudication and were not required to offer evidence that Nitey had been restored to competency at the time of the execution of the will.

These conclusions are amply supported by the previous decisions of this court and the law on this proposition in this jurisdiction can no longer be open to question. The following cases, in which the fact of an adjudication of incompetency and guardianship

was either the issue or a subject of discussion by the court, settled the law finally in this state to be as we have herein announced: In re Wah-kon-tah-he-um-pah's Estate (Exendine v. Redcorn) et al., 108 Okla. 1, 232 P. 46; In re Wah-kon-tah-he-um-pah's Estate (He-to-op-pe et al. v. Hanna et al.), 109 Okla. 126, 234 P. 210; Lena et al. v. Patterson et al., 113 Okla. 156, 242 P. 238; In re James' Estate, 131 Okla. 142, 268 P. 296; Peace v. Peace et al., 149 Okla. 123, 299 P. 451; In re Riddle's Estate, 165 Okla. 248, 25 P. (2d) 763.

Contestants cite in support of their position the two cases of Hill et al. v. Davis et al., 64 Okla. 253, 167 P. 465, and Payton v. Shipley, 80 Okla. 145, 195 P. 125. The Hill Case does not support their contention. It merely restates the substance of the statute:

"But she could, nevertheless, make a valid will if she had been in fact actually restored to capacity at the time of its execution."

Probate of the will involved was refused because of failure of legal attestation.

In the Payton Case the testator was a full-blood Indian, a deaf mute, and under guardianship. The majority opinion rejected the will because of failure of testamentary capacity. With reference to the guardianship, some of the witnesses testified that there had been no change in the mental condition of the testator, but the court does not say that evidence was required to show a change. The dissenting opinion makes some comment that leaves room for difference of opinion as to its meaning, yet the Justice near the end of the opinion says that he does not believe that the testator was of unsound mind and would admit the will.

To remove these two cases, however, from the realm of future controversy, we expressly overrule any expression therein contained that in any manner tends to support contestants' position.

As hereinbefore stated, Nitey was not adjudicated to be a person of "unsound mind" or "insane." We are therefore not passing upon the situation where there has been an adjudication of insanity, and nothing herein said is intended as implying that we would or would not reach similar conclusions under such a state of facts.

Under their third assignment of error, contestants raise the question as to whether the judgment of the district court is contrary to or against the clear weight of the evidence. This of necessity involves a con-

sideration of the evidence. There is a large record in this case. Many witnesses testified, Indian and white, professional men, business men and men holding official positions. Many court records were offered. We have carefully examined it all, and conclude that there is ample evidence to support the judgment of the trial court.

The real point in issue, of course, is whether Nitey possessed testamentary capacity at the time she executed the will. The testimony of proponents' witnesses was clearly to the effect that she possessed such capacity. Contestants sought to prove the contrary. Yet a number of their witnesses testified that Nitey knew she had property, knew something of its nature and location and knew and loved her children and sister and would want them to receive her estate; and two of their witnesses testified that she could understand the trust provisions of the will if sufficiently explained.

Contestants seemed to have centered their attack on the ability of Nitey to comprehend the amount of her estate and understand in detail the nature of the trust provisions in the will. But in doing this they demanded too high a standard and one not contemplated by law. If Nitey comprehended in a general way the nature and extent of her property and understood in a general way the effect of the trust provisions, there was a sufficient comprehension.

Further discussion of the evidence can serve no useful purpose. We conclude that Nitey, at the time she executed her will, understood the nature and consequences of her acts and was free from duress, menace, fraud, and undue influence, and the court's findings and judgment should be sustained.

The fourth and fifth assignments of error are without merit. Contestants practically concede due publication, and from the evidence given by the interpreter and others present at the execution of the will, we are convinced that Nitey did legally publish the will. So, also, as to the witnessing of the will. The interpreter and two Indian witnesses spoke and understood both English and Creek, the Indian language of the testatrix; Nitey herself spoke and understood some English. We conclude that legal execution and attestation were satisfactorily proved.

The judgment of the district court is affirmed.

McNEILL, C. J., OSBORN, V. C. J., and BUSBY, WELCH, CORN, and GIBSON, JJ., concur. RILEY and BAYLESS, JJ., absent.