## In re MASON'S ESTATE.
## MASON et al. v. UTTERBACK et al.

No. 27932. May 23, 1939.

Rehearing Denied June 20, 1939.

MacDonald & MacDonald and D. S. MacDonald, Jr., for plaintiffs in error.

A. H. Ferguson, James W. Batchelor, and Priscilla W. Utterback, for defendants in error.

OSBORN, J. Minnie M. Mason died July 16, 1936, leaving a will with codicil attached. The petition to admit the will to probate, filed by the executor named in said will, was contested by Dan B. Mason and Hall L. Mason, plaintiffs in error herein. Upon a proper hearing the will was admitted to probate by the county court of Bryan county, and upon appeal, by the contestants, the district court of Bryan county affirmed the judgment admitting said will to probate. Contestants appeal from the order of the district court upon the ground that testatrix did not possess testamentary capacity at the time of executing the will and codicil.

A brief statement of the events preceding the death of the testatrix is necessary. In 1930 George A. Mason died intestate leaving as his heirs the testatrix herein, his widow, and four sons, G. A. Mason, Jr., Dan B. Mason, Hall L. Mason, and Elmo Mason. He left an estate of approximately $100,-000 in value, consisting principally of real property. The surviving sons and widow entered into a written agreement soon after Mr. Mason's death giving Mrs. Mason, who was administratrix of the estate, exclusive control and income from the estate during her lifetime with the understanding that

none of the heirs would ask for distribution of the estate during her lifetime. Mrs. Mason employed her son, Hall Mason, as manager of the estate at a salary of $100 per month and expenses. Apparently this arrangement was not satisfactory, and, in January, 1935, the mother and sons entered into another agreement dividing the estate in the following manner: one-third to Mrs. Mason and the remaining two-thirds equally among the four sons. The county court then ordered the estate distributed in accordance with this agreement. Mrs. Mason's share, consisting of some 20 pieces of real property and some personalty, was valued at approximately $35,000. On July 16, 1936, Mrs. Mason died and left surviving four sons heretofore named and six grandchildren. The grandchildren were Bobbie Ray Mason, son of G. A. Mason, Jr.; Dorothy Frances and Edna May Mason, daughters of Hall Mason by his first marriage, and an infant son of Hall Mason by his second wife; Ruby Jane Mason, adopted daughter of Dan Mason, adopted during the lifetime of Dan Mason's first wife; and John Allen Mason, son of Elmo Mason. Thus grandchildren by all four sons survived the testatrix.

The will in question as executed by Mrs. Mason in July, 1935, having been prepared at her request by W. E. Utterback, an attorney who had been her counsel in the affairs relative to her husband's estate. The testatrix had apparently gone to him voluntarily and unaccompanied and proposed that he prepare her will. Mr. Utterback was named as executor in said will and shortly after the death of Mrs. Mason filed a petition for probate of the will in the county court of Bryan county. G. A. Mason, Jr., and Elmo Mason, the two sons who received bequests under the will, thereupon agreed to the appointment of W. E. Utterback as executor and waived notice of hearing. In the hearing in the county court they were consulted by counsel for proponents in examining witnesses for the contestants, but did not testify themselves, but at the trial in the district court they testified in behalf of the contestants, their brothers, Dan B. Mason and Hall L. Mason, who received nothing under the will and were contesting it. The sole question presented by this appeal is whether Mrs. Minnie M. Mason was possessed of testamentary capacity at the time of executing the will and codicil thereto.

Under the terms of the will herein, G. A. Mason, Jr., and Elmo Mason, sons of the testatrix, each received a life estate in a tract of land with remainder to the grandchildren, and after specific bequests were made to a niece and all the grandchildren, except the infant son of Hall Mason, the residue was divided as follows: Said sons, G. A. Mason, Jr., and Elmo Mason, were to take an undivided one-fourth each; Dorothy Frances and Edna May Mason, granddaughters of the testatrix and daughters of Hall Mason by his first marriage, were to take equal shares in an undivided one-fourth in trust until they became 21 years of age; and the remaining one-fourth was granted to Ruby Jane Mason, granddaughter of testatrix and adopted daughter of Dan B. Mason, in trust until she became 21 years of age. It was further provided that said Dan B. Mason was to have no part in the control or management of the properties taken in trust by said Ruby Jane Mason during her minority. At the specific direction of the testatrix paragraph 12 of the will was included stating that Dan B. Mason was purposely omitted from the will because of the manner in which he had treated the testatrix. The other son, Hall Mason, is referred to in the will only as the father of the two children, Dorothy Frances and Edna May. By the terms of the codicil a devise of a tract of land to Lula Frances Miller, a niece of the testatrix, for life with remainder to the sons, G. A. Mason, Jr., and Elmo Mason, and the three granddaughters, was revoked and the property devised to her grandsons, Bobbie Ray Mason and John Allen Mason, who had received less than the granddaughters.

Before considering the evidence, we shall briefly refer to the established principles of law pertinent to the question of testamentary capacity. This court has frequently held that a testator has a sound mind for testamentary purposes when he can understand and carry in mind, in a general way, the nature and situation of his property, and his relation to the persons around him, to those who naturally have some claim to his remembrance, and to those in whom and things in which he has been chiefly interested, and that he must understand the act which he is doing and the relation in which he stands to the objects of his bounty and to those who ought to be in his mind on the occasion of making his will. Payton v. Shipley, 80 Okla. 145, 195 P. 125; In re Wah-kon-tah-he-um-pah's Estate, 109 Okla. 126, 234 P. 210; In re Estate of Tayrien, 117 Okla. 216, 246 P. 400; In re Riddle's Estate, 165 Okla. 248, 25 P.2d 763.

The question of mental capacity to make a will is a question of fact, and is to be

determined from the condition of the testator's mind at the time of the making of the will; and in determining the mental status of the testator the presumption of sanity will be indulged; and where a will appears to be a rational act performed in a rational manner, such presumption and such apparently rational act amounts to evidence of testamentary capacity; and in determining the mental status of a testator in a will contest, the question to determine is, "Did the testator possess testamentary capacity at the time of the making of the will?" Prior and subsequent acts have bearing only to the extent of helping to determine the mental status at the time of the execution of the will. In re Estate of Tayrien, supra; Exendine, Ex'r, v. Red Corn, 108 Okla. 1, 232 P. 46; In re Wah-kon-tah-he-um-pah's Estate, 109 Okla. 126, 234 P. 210; Dickey v. Dickey, 66 Okla. 269, 168 P. 1018; In re Blackfeather's Estate, 54 Okla. 1, 153 P. 839; Re George Weir's Will, 9 Dana (Ky.) 434; Bilby v. Stewart, 55 Okla. 767, 153 P. 1173.

Regarding delusions on the part of a testator as affecting testamentary capacity, the rule is well expressed, and aptly illustrated, by the Supreme Court of California in the case of In re Estate of Chevallier (Cal.) 113 P. 130, wherein that court said:

"* * * It would not be sufficient merely to establish that testator was a victim of some hallucination or delusion to avoid the will. The evidence must go further and establish that the will itself was the creature or product of such hallucination or delusion, or, in other words, that the hallucination or delusion bore directly upon and influenced the creation and terms of the testamentary instrument. It would thus not be sufficient, to avoid a will, to show that the testator believed that the moon was made of green cheese, but if it should be established, in addition thereto, that because of this belief he devised or bequeathed his property in a way which, saving for the belief, he would not have done, a case is presented where the abnormality of mind has a direct influence upon the testamentary act."

The question to be determined on this appeal is whether, under the foregoing authorities, the judgment of the trial court admitting the will to probate is against the clear weight of the evidence, relating to the testamentary capacity of the testatrix herein, since it is well established that a judgment admitting a will to probate and the findings of the trial court upon the issues raised by the contestants will not be disturbed on appeal to this court unless against the clear weight of the evidence.

In re Will of Son-se-gra, 78 Okla. 213, 189 P. 865, and authorities cited therein.

It is undisputed that the testatrix, who was approximately 65 years of age at her death, had suffered several paralytic strokes prior to the execution of the will, the most severe one being in February or March, 1935, which had incapacitated her for about a week. The proponents alone introduced testimony regarding the conduct and appearance of Mrs. Mason at the time of executing the will and codicil. We shall consider the evidence submitted by the contestants.

All four sons of the testatrix testified in detail regarding their relations with her subsequent to their father's death. Other witnesses, including the testatrix's sister and brother-in-law, also testified as to her conduct and appearance. All witnesses for the contestants emphasized the fact that in their opinion Mrs. Mason had changed greatly since the death of her husband both in her manner of speech and dress and conduct in general. The substance of this evidence was that Mrs. Mason had changed from a neat, modest, and dignified lady of careful speech to a slovenly, uncouth, and eccentric old woman who could not get along with anyone and thought every one, and particularly her sons, were trying to take advantage of her in the management of her property. All of the witnesses for the contestants, excepting one, a plumber who refused to express an opinion upon Mrs. Mason's mental condition, testified that she did not, in their opinion, possess testamentary capacity from some time prior to the execution of the will to the date of her death.

Two physicians testified for the contestants. The first was Dr. James H. Lipsey, a nephew of the testatrix, who testified that he resided in Memphis, Tenn., and was rated by the local medical association of that city as a specialist in allergic and surgical diseases of the head, but did not specialize in mental diseases. Dr. Lipsey testified that Mrs. Mason was suffering from senile dementia, as distinguished from the senility of old age, and cerebral arteriosclerosis. He stated that he examined her in 1931, shortly after the death of Mr. Mason, for the first time and had thought that her condition was the temporary result of her husband's death, but upon examining her again in 1933 he concluded that her condition was permanent and progressive. In 1936 Dr. Lipsey examined Mrs. Mason shortly before her death and stated that his diag-

nosis at that time confirmed his previous opinion. The substance of his conclusions based upon these examinations was that the testatrix, Mrs. Mason, did not possess testamentary capacity at any time subsequent to the date he examined her in 1933, which was prior to the execution of the will herein.

Dr. A. M. McElhannon, a physician and surgeon of Sherman, Tex., was also a witness for the contestants and testified that he examined the testatrix about six days before her death and that she had a form of insanity which at her age was unquestionably senile dementia. Upon cross-examination Dr. McElhannon further stated that, if the testatrix had driven her own car, rented her property and collected the rents from it, and managed her affairs as witnesses for the proponents testified, then she was sane. This doctor also stated that he was not a specialist in mental diseases.

The evidence in behalf of the proponents consisted of the testimony of business men and some of Mrs. Mason's tenants who had business dealings with her both before and after the execution of the will, the attorney who drew up the will. the stenographer to whom the will was dictated and the subscribing witnesses. These witnesses all knew Mrs. Mason and stated that she possessed testamentary capacity at the time of executing the will and codicil, and further said that they failed to perceive the startling change in her appearance and demeanor referred to by the witnesses for the contestants.

W. E. Utterback, the attorney who prepared the will and codicil and is named as executor therein, testified that he had known the testatrix for approximately 20 years. Mrs. Mason first talked with him about drawing a will in 1934, but did not come to his office to consult him about making it until January, 1935. At that time Mr. Utterback stated he prepared a will in accordance with her instructions, but, when notified to come to his office and execute the will, she stated that she wanted to think it over. About the first of May, 1935, Mrs. Mason again came to Mr. Utterback's office for the purpose of preparing another will. After this will was prepared Mrs. Mason went over it with Mr. Utterback and said that she was not satisfied and wanted to think it over. This will was not executed, and in June, 1935, Mrs. Mason had a third will prepared which she executed. But the following month she returned to Mr. Utterback's office and suggested certain changes,

and to make these changes the will offered for probate herein was prepared and executed on July 27, 1935, at which time Mr. Utterback stated that he went over each paragraph of the will with Mrs. Mason and she expressed satisfaction with it. In January, 1936, Mrs. Mason came to Mr. Utterback and told him that she had decided to leave certain property to two of her grandsons rather than to her niece as the will provided; consequently, the codicil making that change was prepared and executed.

Miss Priscilla W. Utterback, daughter of W. E. Utterback and a member of his law firm, and Mrs. Margaret Campbell, secretary in said law office, were the subscribing witnesses to both the will and the codicil thereto. Miss Utterback testified that she had known the testatrix for a number of years. She further stated that Mrs. Mason had talked rationally and acted normally at all times when in the office having the will prepared, and that in her opinion Mrs. Mason possessed testamentary capacity when she executed the will and codicil. Mrs. Campbell and Mrs. Ruth Pierce, who was also a secretary in Mr. Utterback's office and had been present when Mrs. Mason had come there to discuss her will, as well as when she executed it, testified substantially the same as Miss Utterback. Both stated that Mrs. Mason manifested complete understanding of what she was doing when she executed the will, and had always conducted herself as a normal and rational person while there. The foregoing briefly outlines the substance of the evidence of both contestants and proponents.

Copies of the three tentative wills prepared by Mr. Utterback were introduced in evidence for comparison with the one offered for probate, which was the fourth and last will prepared. An examination of these discloses that the testatrix adhered to substantially the same general plan of distribution in each will, except that in the last instrument the son, Dan Mason, was disinherited along with his brother, Hall Mason, who had not been included in any of the instruments. In the three tentative wills Dan Mason had been named a residuary devisee along with his brothers, Elmo Mason and G. A. Mason, Jr., and the granddaughters of the testatrix. In all the instruments Mrs. Mason clearly manifested the intent to first provide for her grandchildren. It is admitted by all parties that Mrs. Mason was very fond of her grandchildren, and especially fond of Ruby Jane, the adopted daughter of Dan Mason, and the two daugh-

ters of Hall Mason by his first wife from whom he was divorced. These granddaughters received the greater part of the estate. It will also be observed that under the terms of the will the grandchildren whose fathers were disinherited received specific devises as well as being named residuary devisees, whereas those grandchildren whose fathers were remembered in the will were given relatively small devises.

It is suggested that the fact Mrs. Mason had four wills prepared disclosed an inability on her part to properly understand what she was doing in executing a will. It is true that she evidently could not immediately, after deciding to execute a will, determine exactly how she wished to distribute her property, but the fact remains that when she executed a will which satisfied her she did not thereafter make any changes, except when she revoked a devise to her niece and gave the property to her grandsons who had not received as much as her granddaughters. The testatrix executed the will offered for probate on July 27, 1935, did not die until July 16, 1936, and the only change made was that made by executing the codicil some six months prior to her death.

Even though the testatrix left no property to her two sons, Hall and Dan Mason, whose daughters received substantial devises, we fail to see anything unnatural in this will. All of the estate goes to members of her immediate family, although she has preferred some over others. She was under no legal obligation to divide her property equally among her four sons. One of the primary reasons for the execution of a will is in order that the testator may exercise his personal preferences in disposing of his estate.

The contestants contend that Mrs. Mason was suffering from delusions regarding her four sons in that she thought they were seeking to steal her property. The testimony was that Mrs. Mason was mad at first one and then another of her sons, and complained about all of them, but it is difficult to conclude that such a delusion, if she did labor under one, affected the distribution of her estate, since she named two of them as residuary devisees, although she had complained about those two as much as she had about the two who were omitted from the will. The contestants' evidence, as stated above, was that Mrs. Mason was constantly changing her mind as to which

son or sons she thought caused her the most trouble and grief, yet we find that the will offered for probate herein remained as executed for a year before she died, except for the change made by executing the codicil. The very fact that she executed a codicil to the will disclosed that Mrs. Mason knew she had made a will and had in mind the manner in which she had disposed of her property.

It will also be noted that Mrs. Mason did not discuss the execution of a will with her attorney until the parties had determined to distribute Mr. Mason's estate, and at the time she discussed distributing the estate with her attorney, Mr. Utterback, she advised him that she wanted to talk to him later about executing a will. It was certainly a normal and rational thing for an elderly person, who had suffered several paralytic strokes, to suggest to her attorney that she wished to execute a will disposing of the property which she would take when her deceased husband's estate was distributed.

Although we have not set forth the evidence herein in detail, we have carefully analyzed the testimony of each witness. As heretofore pointed out, there is conflicting evidence regarding the appearance and conduct of the testatrix and the manner in which she conducted her personal business affairs, both before and after the execution of the will; but the evidence of the proponents is uncontradicted as to Mrs. Mason's demeanor and appearance and ability to understand the character and extent of her property and the disposition she intended to make of said property when discussing the preparation of a will with her attorney and at the time of executing the same. Notwithstanding the testimony of her nephew, Dr. Lipsey, that she was suffering from senile dementia and did not possess testamentary capacity, Mrs. Mason did make a reasonable and intelligent disposition of her estate, performing a rational act in a rational manner.

Under the evidence and the authorities heretofore discussed, we cannot say that the judgment of the trial court is against the clear weight of the evidence.

The judgment of the trial court is affirmed.

BAYLESS, C. J., WELCH, V. C. J., and RILEY, CORN, GIBSON, HURST, DAVISON, and DANNER, JJ., concur.