HICKS et al. v. CRAVATT.

No. 34197.   Sept. 18, 1951.

*235 P. 2d 936.*

Cornelius Hardy, Tishomingo, King & Wadlington, Ada, and Wm. D. French, Tishomingo, for plaintiffs in error.

Thompson & Braly, Ada, for defendant in error.

O'NEAL, J.   This is a proceeding instituted in the county court of Johnston county of Alice Cravatt filing a petition seeking the probate of the will of Sessum Henderson, deceased.

The petition states that Sessum Henderson departed this life at Ada, Oklahoma, on or about June 24, 1948; that said decedent at the time of his death was a resident of Johnston county, the general character and probable value of said estate being: real estate and some money, of the value not to exceed $10,000; that decedent left a will bearing date of August 24, 1935, which, petitioner alleges, is the last will and testament of said deceased; that Alice Cravatt, the person named in said will as executrix consents to act as such, and that she is a resident of Pontotoc county Oklahoma, her postoffice address being Pontotoc, Oklahoma; that the names of the heirs and devisees of deceased, so far as known to petitioner, are: Alice Cravatt, adult, Pontotoc county.

The will appears to have been approved by the county judge of Pontotoc county.

July 29, 1948, plaintiff in error Nora Hick, formerly Henderson, filed a contest against the probate of said will, alleging that she was a niece of said Sessum Henderson, deceased, and that she is the sole surviving daughter of Campbell Henderson, a brother of said Sessum Henderson, deceased, and alleging that said will was not executed and attested in the manner provided by law; that at the time of the purported making of said will, said Sessum Henderson was incompetent to make a will and had been adjudged an incompetent by the county court of Johnston county, and further alleging that said will was procured by undue influence, menace and duress.

August 9, 1948, Mary Scott, now Walker, filed a protest against the probate of said will, alleging that she was a niece of said deceased, and that said will was not executed according to law; that Sessum Henderson was incompetent to make a will; that he was an idiot or imbecile all his life and never had testamentary capacity, and had been adjudged an incompetent by the county court of Johnston county, and

further alleging that said will was obtained by undue influence, menace and duress.

September 8, 1949, Pearl Carolyn Wilson, Cyrus Mose Wilson, Eliza Jane Mose, nee Brown, Flora Belle Brown (Maytubby), and Lillie Brown (Hotema), filed a protest against the probate of said will, alleging that they were second cousins of said Sessum Henderson, deceased; that the will was not executed as required by law; that the said Sessum Henderson was incompetent to make a will and that said will was obtained by undue influence, menace, and duress on the part of the beneficiary and proponent, Alice Cravatt.

Proponent Alice Cravatt filed a response to said contests consisting of a general denial.

The matter was tried to the county court of Johnston county where judgment was entered denying probate of said will. Proponent appealed to the district court where the matter was tried de novo resulting in a judgment and order reversing the county court and admitting said will to probate, and protestants appeal.

In the district court extended hearing was had going mostly to the competency of Sessum Henderson to make the will. Protestants contend that the overwhelming weight of the evidence shows that said Sessum Henderson was incompetent and that he was a congenital imbecile, or idiot. They further contend that the will was obtained by undue influence, menace and duress.

The record shows that Sessum Henderson was a fullblood Chickasaw Indian enrolled opposite No. 2562 of the rolls of the Five Civilized Tribes; that he was 35 years of age at the date of his enrollment, and that he could not speak or understand the English language.

At the time of his death he was the owner of his homestead allotment in Johnston county, Oklahoma, and was also the owner of an inherited interest in some other land and also had some money. December 3, 1919, Sessum Henderson was, on the petition of Joe Fletcher, a friend, declared and adjudged an incompetent by the county court of Johnston county. He was continuously under guardianship from that date until shortly before his death, when the Indian Department took over the administration of the affairs of incompetent Indians. During that time he had had some four guardians. He was never judicially restored to competency.

Protestants produced some fifteen or sixteen witnesses. Their testimony, together with the record showing continuous guardianship, tends strongly to prove that Sessum Henderson was mentally incompetent from his birth and was at all times mentally incapable to transact business of any kind, and was incompetent to make a will. On the other hand, proponent produced almost an equal number of witnesses whose testimony tended to prove that Sessum Henderson possessed sufficient testamentary capacity to make a will.

The record shows that on August 24, 1935, Alice Cravatt and her husband, Overton Cravatt, took Sessum Henderson from where he was living near Reagan in Johnston county to Ada, in Pontotoc county; they took him to the office of Claude V. Thompson, an attorney, who drew the will and where it was signed (by mark) by Sessum Henderson and witnessed by Richard Colbert and Dotson Lilley, and was approved by John Boyce McKeel, county judge of Pontotoc county. It is conceded, however, that approval of the will in question by the county judge was not necessary.

Protestants cite McCarty v. Weatherly, 85 Okla. 123, 204 P. 632, on the question of undue influence. The facts in that case are similar in some respects with the facts in this case. But there is a material difference in the evidence as to some of the facts.

In McCarty v. Weatherly, supra, the record discloses that the testatrix, Kat-

sey McCarty, at the time the alleged will was executed, was about 70 years of age; that she had been blind for some ten or twelve years. During practically all that time she had lived with her daughter, Mary Cravatt, and Alba James, a granddaughter of Katsey Mc-Carty and niece of Mary Cravatt. During all that time Alba James, her granddaughter, had been her companion. She would lead her around, went with her to places she desired to go, and acted as her interpreter; wrote letters for her and rendered her invaluable services as such companion. The daughter, Mary Cravatt, had provided her with a home for some four or five years while Weatherly was her guardian. During that time Weatherly had paid to Katsey, or Mary Cravatt, $7.50 a month out of funds belonging to Katsey for her support.

On the day the will in question was executed, Weatherly, the guardian, arranged for Tom McCarty, the chief beneficiary, to get a team and buggy and go and get his mother and take her to Ada, ostensibly to purchase clothing for her. Katsey wanted Alba James to go along but Tom McCarty refused to allow her to go, giving as an excuse that there was not room in the buggy. They drove to Stonewall in the buggy and from there they went by train to Ada. Weatherly, his wife and his wife's brother, R. J. Ross, Jr., showed up at Ada and joined Tom and Katsey. The five met at the office of Judge Barton where the will was prepared and signed. They did not purchase any clothing for Katsey in Ada but returned to Stonewall where some $25 worth of clothing and dry goods was purchased. In the opinion it is said:

"We find Katsey McCarty, an Indian, approximately 70 years old, able to speak only a few words of English, totally blind, in the town of Ada with J. H. Weatherly, her guardian, and Tom McCarty, her son, and while under their influence and direction she makes a will disinheriting her daughter and granddaughter who have been her main stay and companions during ten or twelve years of her affliction and giving all of her property to Tom McCarty, the boon companion of Weatherly, her guardian. Weatherly is made the executor of the will without bond. During all of the time Katsey was afflicted with total blindness, she was being administered to and cared for by Mary Cravatt and Alba James. It is not shown that Tom McCarty ever did one thing for her in a material way. These circumstances speak louder than words of undue influence. The record conclusively shows this will was prepared at the instance and direction of Weatherly and Tom McCarty and while she was under their influence."

In the instant case there is evidence to the effect that the trip to Ada was made at the instance of the testator, Sessum Henderson. He requested the day before that he be taken to Ada and stated that his purpose was to make a will. The evidence is not sufficient to bring the case within McCarty v. Weatherly, supra, on the question of undue influence.

The will in question appears to have been executed in substantial compliance with the requirements of law. This court has many times held that substantial compliance with the statutes with reference to execution of a will is all that is required.

In re Estate of Tayrien, 117 Okla. 216, 246 P. 400; In re Wah-kon-tah-he-um-pah's Estate, 109 Okla. 126, 234 P. 210; Speaks v. Speaks, 98 Okla. 57, 224 P. 533; In re Dunlap's Will, 87 Okla. 95, 209 P. 651.

There is some contention that the court erred in overruling the motion of plaintiff in error on the grounds of newly discovered evidence. Examination of the record discloses no error in said order.

Affirmed.

WELCH, CORN, GIBSON, JOHNSON, and BINGAMAN, JJ., concur.