SLATER et al. v. PHIPPS et al.

No. 31004. Nov. 16, 1943.

*143 P. 2d 133.*

Tolbert, Tolbert & Gillespie, of Hobart, for plaintiffs in error.

R. Place Montgomery and Clayton Carder, both of Hobart, for defendants in error.

WELCH, J. This cause concerns a contest of the admission of a will to probate upon the sole ground of asserted lack of testamentary capacity. The county court denied probate of the will and the district court, upon appeal, directed that probate thereof be allowed.

Applicable rules are stated in paragraphs 2 and 3 of Bilby et al. v. Stewart et al., 55 Okla. 767, 153 P. 1173, as follows:

"Testamentary capacity, or the lack thereof, is a question of fact. There is no rule by which it may be determined, with precision, where capacity ends and incapacity begins, but this question should be determined from all the facts and circumstances of each particular case; and, where the evidence fairly and reasonably supports the finding of testamentary incapacity, the same will not be disturbed on appeal.

"Ordinarily the test of testamentary capacity is the testator's capacity to understand the effect and consequence of his act, at the time the will is executed."

In McClure, Ex'r, v. Kerchner, 107 Okla. 28, 229 P. 589, appears the following in paragraph 5 of the syllabus:

"A presumption of sanity goes with everyone, and the burden of proving unsoundness of mind in a will contest rests on the contestant."

And the following in the syllabus in Harden v. Harden, 192 Okla., 134 P. 2d 351:

"On appeal from judgment admitting will to probate, when contest was on the grounds of undue influence and lack of testamentary capacity, this court will review the record, but will not reverse unless finding and judgment is clearly against the weight of the evidence."

Testator took his own life in July, 1941. The will offered for probate is dated April 9, 1940. Testator was 77 years of age at the time of his death. He had been a farmer all, or nearly all, of his life and had lived in the community where he died since 1901. His estate is valued at about $10,000, consisting of some two farms and small rent properties in Hobart. His wife, with whom he had lived since early life, died in July, 1939. There were surviving four children, two of whom appear herein as proponents and two of whom appear as contestants of the will.

Testator was confined in a state hospital of Missouri from July to September, 1900. His case was therein diagnosed as melancholia and he was discharged therefrom as recovered.

The estate seems to have been accumulated through the joint efforts of testator and his wife since their removal from Missouri to Oklahoma in 1901.

Numerous witnesses were heard on behalf of the proponents and contestants and we have examined the entire evidence.

It appears therefrom that testator bore the reputation of being somewhat erratic, and that subsequent to the death of his wife he grew more and more distressed from the loss of his companion and his loneliness. Many instances of emotional disclosure of grief were testified to, and instances where he seemed to abruptly change from one subject to another in conversation. It seems that his interest in his business and personal affairs became increasingly less, subsequent to his wife's death, and he frequently announced his intention of killing himself. He was at times forgetful. He seemed at times to feel that he had no friends or anyone, even his children, who cared for him other than to get his property. We think the evidence shows that particularly since the date of his

wife's death he was severely disturbed emotionally.

We think, however, that the whole evidence discloses with very little contradiction that testator accumulated, cared for, and disposed of his property and business interests in a most deliberate and attentive manner, and with full knowledge and the appreciation of his acts up to the time of death.

He seems to have successfully resisted efforts on the part of these contestants to obtain certain funds from a bank which they felt they should have after the mother's death. He alone attended to all of his business affairs, running accounts and paying them, making some small loans and attending carefully to their collection. Selling considerable livestock and attending to the details of a number of such sales without a showing in a single instance of lack of ability to fully protect his interest. His business affairs appear to have been in good order at the time of his death, taxes fully paid and property insured. He advised, with apparent intelligence, with his attorneys, abstractors, and other business men in relation to many of his business matters. His physician who had attended and prescribed for him, and who had seen him frequently since his wife's death, gave it as his opinion that he was capable of ordinary understanding.

He went alone to his attorney and of his own volition and engaged him in the preparation of his will. He had a will prepared shortly after the wife's death, then later the one offered for probate, and still later consulted with his attorney regarding another. His desires and disposition of his property expressed in each will and even as later discussed were all substantially the same, and that in spite of the fact that his attorney seems to have suggested other terms to him in the interest of harmony. (It seems that one of the contestants here had already indicated displeasure with the will.)

It is urged that the unequal division of the property as made by the will was unnatural and indicates that same was the product of insane delusions. Citing In re Mason's Estate, 185 Okla. 278, 91 P. 2d 657, and other authorities. These contestants were given only nominal bequests therein.

This record shows that testator in discussing his reasons for his action stated:

"With particular reference to the will under discussion, he said that the reason he was making a difference in his children was that the Slaters were pretty well fixed in their own right, and that Myrtle was sick and in ill health and didn't have anything, and Everett was about in the same shape. He didnt' say anything about Louelva in that respect."

The testimony here substantially indicates that testator's conception of the physical and economic status of those mentioned was reasonably justified.

We do not think that the judgment of the trial court is clearly against the weight of the evidence, and the same is therefore affirmed.

CORN, C. J., GIBSON, V. C. J., and RILEY, OSBORN, BAYLESS, DAVISON, and A R N O L D, JJ., concur. HURST, J., absent.