In re MARTIN'S ESTATE.
FORBIS et al. v. MORGAN et al.

No. 33003.   Jan. 13, 1948.

*188 P. 2d 862.*

C. W. Wisdom, of Okeene, and E. Blumhagen, of Watonga, for plaintiffs in error.

Otjen & Carter, of Enid, and R. H. Morgan, of Watonga, for defendants in error.

HURST, C.J. This is an appeal from a judgment of the district court admitting the will of John V. Martin to probate, on appeal from the judgment of the county court denying probate of the will. The will was made August 20, 1945, and Martin died February 16, 1946, being then past 90 years of age. The will devised all of testator's property consisting principally of a farm of the value of some $20,000 to Letha Hale Casdorph, who was not related to him but was the daughter of his former pastor. This was executed about two weeks after he took up his abode in the home of Mrs. Casdorph and her husband. He continued to live in her home until his death. He had no children, but had a brother and a sister residing in the State of Washington, and some nephews and nieces by deceased brothers and sisters, who contested the probate of the will. The only question for decision is whether the finding of the district court that testator possessed testamentary capacity is clearly against the weight of the evidence.

On October 3, 1940, testator was adjudged incompetent and guardians were appointed over his person and estate. This incompetency proceeding was instituted by two of his relatives about a week after testator had conveyed a portion of his farm to a Mrs. Jenlink. Soon after the guardians were appointed, they sued to cancel the deed, and the same was, on January 5, 1942, canceled because of undue influence. On September 5, 1942, testator was restored to capacity. On September 27, 1945, testator sued to cancel an agricultural lease on his farm on the ground that he was imposed on and the lease was changed and material provisions were deleted without his consent, which he did not discover because of his poor eyesight, but it does not appear that this cause was disposed of prior to the trial of the instant case.

There is a sharp conflict in the evidence as to whether testator had testamentary capacity at the time the will was made. There were about as many witnesses expressing an opinion thereon on one side as on the other. Some of the witnesses testifying for the contestants stated that testator managed his farm and made leases and agreed to subleases and that he carried on his banking business. Some of them had recently transacted business with him on the assumption that he was competent. There was a conflict in the evidence as to whether he properly managed his farm. Some of contestants' witnesses testified that testator knew the character and extent of his property, knew his relationship to his relatives, and knew the nature and effect of a will. There was a conflict in the evidence as to whether testator, a short time before his death, wanted to be removed from the home of the beneficiary under the will. One witness testified that a short time before testator died he said that if he could be removed to another place of abode, he would destroy his will. This tends

to prove that testator knew he had made a will, knew its effect, and effect of its destruction.

In addition to the testimony of proponents' witnesses that testator was competent and knew the character and extent of his property and understood the relationship between himself and his relatives, these witnesses testified that during the winter of 1945, and soon after the will was executed, the testator was able to carry on with his attorney the said litigation over the farm lease on his land and to furnish him certain information by mail answering pertinent questions submitted by letter. It appears that the letters were written for Martin by others, but the information contained in them was furnished and signed by Martin.

It appears from the record that testator was anxious to arrange for his care during his declining years. This appears from the pleadings in the action to set aside the deed and in the action to set aside the agricultural lease, above referred to. While the record does not affirmatively disclose that this was the motive for making the will, yet such inference may be inferred from the former litigation and the circumstance that the will was made soon after he took up his residence with Mrs. Casdorph and that he continued to live in her home until he died. The record also shows that testator was displeased with the action of his relatives in having him adjudged incompetent and guardians appointed for him, and this was probably the reason he did not want any of his relatives to have any of his property. The third paragraph of the will contains a statement that he had no wife, children or grandchildren, and he named his brother and sister and stated that he had nieces and nephews, but that he did not want any of his relatives to have any of his property. Under these circumstances, we cannot say that the will giving his property to one not related to him, and disinheriting his blood relatives, is so unnatural as to indicate a lack of testamentary capacity, as argued by contestants.

The rule is that testamentary capacity is a question of fact to be determined from all the facts and circumstances of each case, and since the presumption of sanity goes with everyone, the burden of proving testamentary incapacity in a will contest rests upon the contestant, and the finding of the trial court in such a case will not be disturbed on appeal unless it is clearly against the weight of the evidence. Slater v. Phipps, 193 Okla. 267, 143 P. 2d 133. The capacity is to be determined as of the time of the execution of the will. Peace v. Peace, 149 Okla. 123, 299 P. 451; Mason v. Utterback, 185 Okla. 278, 91 P. 2d 657. Testamentary capacity has been variously defined by this court. From a consideration of the various definitions, we think it may well be defined as follows: A person has testamentary capacity when his mind and memory are such that he knows, in a general way, the character and extent of his property, understands his relationship to the objects of his bounty and to those who ought to be in his mind on the occasion of making a will, and comprehends the nature and effect of the testamentary act. McClure v. Kerchner, 107 Okla. 28, 229 P. 589; Slater v. Phipps, above; Amos v. Fish, 193 Okla. 406, 144 P. 2d 967. The fact that testator was adjudged incompetent to handle his business affairs in 1940 does not establish his testamentary incapacity in 1945 (Peace v. Peace, above; Moore v. Glover, 196 Okla. 177, 163 P. 2d 1003), and by the same token his restoration to capacity to transact his business in 1942 did not establish his testamentary capacity in 1945. 68 C.J. 437, 479. There are only circumstances to be considered, along with all the other facts in evidence.

When the evidence is weighed in the light of these rules of law, we are unable to say that the finding of the district court that testator had testamentary capacity at the time the will

was made is clearly against the weight of the evidence.

Affirmed.

DAVISON, V.C.J., and RILEY, WELCH, CORN, GIBSON, and LUTTRELL, JJ., concur.