Irene HUTCHINGS, Plaintiff In Error,

v.

George BAILEY, Defendant In Error.

No. 36610.

Supreme Court of Oklahoma.

Nov. 22, 1955.

Lawrence H. Green, Pat Holman, Ada, for plaintiff in error.

King & Wadlington, by Carloss Wadlington, Ada, for defendant in error.

HUNT, Justice.

Irene Hutchings offered for probate in the County Court of Pontotoc County a will dated March 25, 1948, signed by George B. Bailey and attested by two witnesses, as provided by statute, 84 O.S.1951 § 55, by the terms of which a bequest of $50 was made to one Mrs. Sadie Fulton, a bequest of $5 to his only son, George Bailey, and the rest and residue of his property to proponent, Mrs. Hutchings, naming her executrix without bond.

In her petition for probate of the will the proponent alleged that deceased's son was in the armed forces and asked that an attorney be appointed to represent his interests; this was done, and in due time a contest of the will was filed on behalf of the son alleging improper execution of the will, incompetency of the testator, and undue influence. Upon hearing the County Court denied the contest and admitted the will to probate.

The son perfected an appeal to the District Court, where, upon trial de novo, findings of fact were made to the effect that at the time of making said will the testator did not possess the mental capacity to know the nature and extent of his property, to know and keep in mind the natural objects of his bounty, or to understand the purport of the instrument, and that the free agency of the testator was destroyed; the court concluded as a matter of law that the deceased did not possess testamentary capacity and was subject to undue influence and entered judgment incorporating said findings of fact, together with the further finding that the will offered for probate was not the last will and testament of deceased, and conclusions of law, and reversing the order of the County Court admitting the will to probate. From order overruling motion for new trial proponent has perfected this appeal.

On the points here at issue (lack of testamentary capacity and undue influence) the evidence of contestant reasonably tends to show that deceased at the time of his death on May 24, 1950, was approximately 84 years of age; that deceased and his wife had obtained a divorce in about 1931, the wife retaining custody of the only child of the marriage (the son, George Bailey, contestant here); that in the property settlement the wife received the photographic studio which she thereafter operated, and deceased received the house and lot which had been the home of the parties; that after the divorce deceased converted the garage on the premises into living quarters for himself and rented the house; these house rentals seem to have been his sole source of income; that deceased visited with his son frequently after the divorce; that in about 1941 deceased's ex-wife and his son, who by that time was 16 years of age, went to Washington, D. C., where both obtained employment; that in about 1943 the ex-wife received a telegram advising that deceased had had a stroke and needed her, and she and her son quit their jobs and came to Ada to care for him; that she and her son cared for deceased for several weeks, after which she left for Fort Worth, but the son stayed on and hired a nurse to look after his father until he had recovered to the point that he could care for himself; that after this stroke deceased was partially paralyzed, was very infirm and feeble, and walked with two canes; in the latter part of 1943, the son, who was then 18, enlisted in the armed services and the ex-wife returned to Washington and obtained employment there; that the son continued to visit his father from time to time on furloughs until he was sent overseas, and thereafter wrote his father regu-. larly; that in about 1944 the proponent became a tenant of deceased, remaining as such for about a year and a half, then moved; that after she moved she visited deceased from time to time, bringing him gifts of food; that in about 1946 or 1947 proponent moved back into deceased's house under an arrangement whereby, so deceased told several of his neighbors at the time, she paid $12 per month rental, instead of the regular rental of $35 per month, and in exchange for the decreased rental was to take care of deceased, cook his meals and do his laundry; that in about 1947 the ex-wife returned to Ada and established a photographic studio there and was in and out of Ada for several years thereafter; that deceased dropped in at the studio from time to time to visit; that after his stroke in 1943 deceased's mental faculties deteriorated to a marked degree; that he would fail to recognize friends and neighbors of long standing and even his ex-wife; that he was very forgetful, childish, eccentric, rambling in his speech, dwelling entirely on incidents in his early life and repeating the same stories over and over; that this was especially true during the year the proffered will was executed, in 1948, and increasingly so up to his death; that from about 1948 on he became so feeble he was no longer able to walk to town and thereafter called the same cab driver to transport him, assist him in his errands, such as getting groceries, paying taxes, getting haircuts, etc.; that he proposed to at least two people that if they would take care of him he would leave them his property, but both refused because they did not think he knew what he was doing; that on one occasion proponent was over-

heard questioning deceased about his property and he told her to ask his lawyer, that whatever his lawyer said was all right; that deceased was very proud of his son and stated on several occasions that he intended to leave all his property to him; that a little over a month before his death deceased became so violent that proponent asked that she be appointed his guardian, so that she could expend some of his funds for medical attention for him, and proponent was appointed his guardian and authorized to expend the sum of $35 per month for his care; nine people, all of them either close neighbors or friends who had occasion to see him almost every day, expressed their opinion that in 1948, the date the will was executed, deceased did not have the mental capacity to know the nature and extent of his property, who should be the objects of his bounty, or what effect a will would have on the disposition of his property, and that he had not had such mental capacity from the time of his first stroke in 1943 up to the time of his death. Contestant introduced in evidence a will dated June 25, 1949 (the proffered will was dated March 25, 1948), signed by deceased and attested by two witnesses, as required by statute, which will had been on file in the Court Clerk's office since July 6, 1949, by the terms of which deceased's son was bequeathed $5; one Lila Middleton was bequeathed $1,000; the rest and residue of the property was given and devised to Irene Hutchings (proponent here of the prior will) on condition that she pay all his funeral and other debts and see that his body was buried in his family plot in Humboldt, Kansas; all prior wills were revoked; and his attorney, E. N. Jones (who pre-deceased the testator by a short time), was made executor. Contestant called proponent to the stand as his witness; she claimed the reason she offered the will dated March 25, 1948, which she had had in her possession at all times, for probate instead of the later will which had been on file with the Court Clerk was not because the first will was more favorable in its terms to her than the second but because she took the position that deceased was competent at the time the first will was executed and was incompetent on the date of the second will. She also admitted that she had had some conversation with deceased's attorney about deceased and his property prior to the time she moved back into deceased's house as a tenant. Three witnesses testified to incidents when, on occasions that they tried to visit deceased and look after his welfare, proponent and her husband refused them access to deceased and told them not to come around him any more.

On behalf of contestant the evidence reasonably tends to show that until be became too feeble deceased looked after his property, kept children out of the fruit trees, signed for his homestead exemption, paid his taxes, bought his groceries; that he played dominoes occasionally with some of his friends; that during the year 1947 he often dropped in to a certain doctor's office, not for treatment, but just to visit and while away the time while waiting for his attorney, who had offices on the same floor; that this doctor was of the opinion that while the old man was childish, inclined to be boresome and to dwell exclusively on incidents of the past, there was no evidence of insanity that he noticed; that the doctor could not say whether deceased had mental capacity to make the will of March 25, 1948, because he did not see him on that date; that proponent moved back into deceased's house in about 1947 at his request with an agreement that she pay $12 per month, although she had theretofore on her previous tenancy paid $35, because her husband was ill and out of work and because she had been good to deceased; that there was no specific agreement that she take care of deceased, although she did so, preparing his meals and doing his laundry; that she discussed the situation with deceased's lawyer before she moved back, but did not remember the details of the discussion; that deceased was competent until about 10 or 11 months after the date of the will of March 25, 1948, after which he was incompetent; that proponent denied certain neighbors and the ex-wife access to deceased at his request; that the funeral expenses had been paid from deceased's funds by an order of court made upon an

agreement between the attorneys for contestant and proponent.

Proponent's first two propositions are based on the erroneous assumption that the trial judge made contestant's requested findings of fact and conclusions of law his own. An examination of the record discloses this error. The trial judge rejected the requested findings of fact and conclusions of law submitted by both proponent and contestant and entered his own, which, as above stated, are predicated upon the finding that at the time of the execution of the proffered will deceased lacked testamentary capacity and was subject to undue influence. It is therefore unnecessary to discuss these propositions which are based upon findings the court did not make.

Proponent's next proposition is that the court erred in finding that deceased lacked testamentary capacity at the time of the execution of the proffered will, citing cases to the effect that mere advanced age or physical infirmity do not render one incapable of making a will, Dunkin v. Rice, 197 Okl. 150, 169 P.2d 210; King v. Gibson, 207 Okl. 251, 249 P.2d 84, etc. As shown by the facts outlined above, however, contestant's evidence on the point shows far more than mere physical weakness. Nine people testified that in their opinion deceased was incompetent and testified to facts upon which they based their opinion. There is substantial evidence to support the finding of the trial court on the point and the judgment is not clearly against the weight of the evidence. In such case this court will not reverse the trial court. In re Delancy's Estate, 160 Okl. 57, 15 P.2d 815; In re Worrell's Estate, 167 Okl. 172, 29 P. 2d 94.

Proponent's remaining two propositions are based upon alleged error in the finding that the will was obtained by undue influence and in the finding that the last will revoked the first will. In view of our holding above affirming the trial court on the issue of lack of testamentary capacity, these propositions are immaterial and need not be discussed.

Affirmed.