377 P.2d 210 (1962)
In the Matter of the ESTATE of Osborne G. McCURTAIN, Deceased.
C. C. GILLESPIE, Sr., Plaintiff in Error,
v.
Aaron HANCOCK, Cora James, Joe Colbert, Sephus Jefferson, Bessle Beck, Minnie McCurtain, Rhoda Strickland, Bessie Martin, Irene McCurtain, et al., Defendants in Error.
No. 39961.
Supreme Court of Oklahoma.
December 18, 1962.
C. B. Perdue, Wilburton, B.S. Null, Hartshorne, for plaintiff in error.
Bell, Tucker & May, by Charles B. Tucker, McAlester, Haskell Paul, Pauls Valley, Luster Cook, Field Solicitor Bureau of Indian Affiairs, Muskogee, for defendants in error.
*211 DAVISON, Justice.
This appeal concerns a will contest. The appeal is by C.C. Gillespie, Sr., (herein referred to as proponent) from a judgment in favor of Aaron Hancock, et al. (herein referred to as contestants) denying probate of the will of Osborne G. McCurtain. The judgment appealed from was rendered on trial de novo in the District Court after appeal from the judgment of the County Court of Latimer County, which admitted the will to probate.
The will was executed by Osborne G. McCurtain on July 2, 1956, when he was about 70 years of age. The deceased was enrolled as a half blood Choctaw Indian and died May 1, 1959. Contestants are the heirs at law of the deceased. The grounds of contest were that the deceased was incompetent to make a will and that the will was the result of undue influence practiced upon deceased by proponent whereby proponent was devised all property of deceased except $1.00 to certain named relatives, and any other relatives of deceased, or any person claiming to be an heir at law. The estate involves 160 acres of land in Garvin County, Oklahoma, and in excess of $10,000 in U.S. Government bonds.
The district court judgment found generally for the contestants and specifically found that deceased was, at the time of making the purported will, not of sound and disposing mind and memory and was incapable and mentally incompetent to make and execute a will, and was acting under the undue influence of the proponent, who was the legally appointed guardian of the deceased, at such time.
Proponent urges the general proposition that the judgment holding the testator lacked testamentary capacity and was acting under undue influence was clearly against the weight of the evidence. Affirmance of the judgment of the lower court as to either of these two findings would be sufficient to deny probate of the will. In view of our conclusion, as herein expressed, we will limit our decision to the finding that the testator lacked testamentary capacity at the time of the execution of the will.
From our examination of the record it appears uncontroverted that McCurtain was enrolled as a half blood Choctaw Indian and of very limited school education and could write his name; that he consistently drank whiskey and alcoholic liquids to excess and got drunk whenever he could get such beverages, and that this situation existed long before the execution of the will on July 2, 1956, and also thereafter; that his wife died at some unstated time and long prior to his death and that his oldest son was killed in World War II, his second son died in the Korean War, and his youngest son was killed while in military service when a military transport plane crashed on a flight between Japan and Korea, and by reason of the death of one or more of his sons he received money and monthly payments from the Veterans Administration; that he was declared incompetent by the *212 county court in 1941 and spent 6 months to a year in a mental institution and was again declared mentally incompetent on June 21, 1956, as a habitual drunkard and unable to manage his affairs and proponent herein was appointed his guardian. There is no evidence of gainful employment. Deceased habitually resided with relatives and after appointment of a guardian he stayed in a rest home or with families, who were paid for keeping him. His nearest relatives were the contestants.
Numerous witnesses testified for the parties. Contestants' witnesses testified McCurtain spoke the Choctaw language and spoke broken English and that his conversation was rambling and wandering; that the loss of his sons prayed on his mind, causing him to be depressed and that he said very little of his relatives; that he did not know the location of his land; that he was frequently seen reading with the newspaper upside down; and that he could not comprehend the meaning and effect of making a will. It was testified that beginning in the spring of 1956, prior to making the purported will on July 2, 1956, the deceased did peculiar things and made unreasonable statements, in that he fought with an imaginary person in the yard at night, he stated airplanes flying overhead were carrying messages from his deceased son and a cowbell carried a message, tore up a Bible that was not his, numerous times put on and wore his clothes backwards and his shoes on the wrong feet, that the church bell had been stolen and thrown in the creek, went to the cemetery and talked with deceased persons buried there; that on July 1, 1956, he doubled his fist and chased the wife in the family he was staying with into the yard and that evening chased the children from the house; and that the acts and conversations took place when deceased was not drunk. As a result of deceased's behavior the proponent took him to Wilburton, Oklahoma, and placed him in a rest home on July 2, 1956. One witness testified deceased was drunk when he returned to the rest home the night of July 2, 1956. A medical doctor testified in answer to a proper hypothetical question that deceased would not be competent to make a will. The medical witness of proponent, who had treated deceased, said deceased could make a will, but testified on cross-examination in answer to a hypothetical question based on evidence that under the facts stated in the question the deceased "probably might not be able to" make a will.
Proponent's evidence was in conflict with that of the contestants. His witnesses described deceased as a person of more than average intelligence for one of his position and status; that he could read and write and carry on an intelligible conversation in English; and that deceased was competent to make a will. It was testified that when deceased was drunk his behavior was substantially different. The strongest evidence supporting proponent's contention is that of persons present when the will was signed. One of these witnesses was the attorney who had prepared the guardianship papers and represented the guardian in that proceeding and had represented deceased and probated the sons estates and had known deceased for many years. He testified that deceased appeared at his office alone at about 2 p.m. on July 2, 1956, and requested that a will be prepared in accordance with the provisions now appearing in the will; that he drew the will and called in two witnesses, who had known deceased for many years, and read the will aloud; that deceased approved and executed the will and the two parties signed as witnesses. The attorney and witnesses testified that only they and deceased were present and that deceased was not drunk and in their opinion was capable of making a will. On the same day the will of deceased, as an enrolled Choctaw Indian, was approved by the county judge but it is admitted that such approval was not necessary to its validity.
It was after hearing the evidence that is substantially set forth above and observing the witnesses giving such testimony *213 that the trial court refused to admit the will to probate.
The question presented herein is whether or not Osborne George McCurtain was capable of executing a valid will on July 2, 1956. In Brown v. Brown, Okl., 287 P.2d 913, we held that the findings, conclusions and judgment of the trial court on the issue of testamentary capacity in proceedings to contest a will cannot be disturbed unless they are clearly against the weight of the evidence.
And in Duckwell v. Lawson, 197 Okl. 472, 172 P.2d 415, 417, we said:
"* * * This court has never held that testamentary incapacity can only be established by proof of complete mental degeneration or an insane delusion. We have said that the test of testamentary capacity is the testator's capacity to understand the effect and consequences of his act (Bilby et al. v. Stewart et al., 55 Okl. 767, 153 P. 1173) but have recognized that there is no rule by which may be determined with precision where capacity ends and incapacity begins, and have said this question should be determined from all the facts and circumstances of each particular case."
In the present case it is admitted that deceased was a habitual drunkard and this was presented by proponent in his petition for his appointment as guardian of the person and estate of the deceased. It is apparent that the acts and statements of deceased beginning in the spring of 1956 and continuing to the evening preceding the date of the execution of the will are those of an irrational and unbalanced mind. The two doctors in answer to a hypothetical question in which these circumstances were incorporated concluded deceased was incapable of making a valid will.
In Brummett v. King, 207 Okl. 607, 251 P.2d 1062, we affirmed a judgment denying probate of a second will on the ground of lack of testamentary capacity, where the evidence in support of testamentary capacity was in some respects similar to that presented by the proponent in the present case. In the cited case there was the evidence of competency, and in addition thereto witnesses to the will and the attorneys present when the will was executed testified to facts and expressed opinions to show the testator was competent. However the trial court concluded that because of evidence of incompetency at other times the testator lacked testamentary capacity and we affirmed such conclusion. In the cited case we stated:
"Proof of testamentary capacity of a testator is not necessarily confined to the exact time of the execution of the will, but the court may consider such evidence of the testator's mental status, together with his appearance, conduct, acts, habits and conversation, both before and after the execution of the will, as would tend to show his mental condition at the time of execution of the will."
The proponent argues that the various erratic and abnormal acts and conversations of deceased, if made, could also have been those of a person under the influence of intoxicating liquor and cites cases holding a habitual drunkard or user of intoxicants is not disqualified to make a will. However such evidence is competent and is to be considered in connection with all the evidence as bearing on the question of testamentary capacity. Generally, in an appealed case this court relies on the trial judge's determination as to the credibility of the witnesses, and as to the weight and value to be given their testimony.
Upon examination of the record we are of the opinion that the trial court's finding of lack of testamentary capacity of Osborne George McCurtain is not clearly against the weight of the evidence. Having reached this conclusion it is not necessary to discuss or determine the correctness of the further finding that the will was the result of undue influence practiced on the deceased by the proponent.
Affirmed.