In the Matter of the ESTATE of Charles BAILESS, a/k/a Charles E. Bailess and a/k/a C. E. Bailess, Deceased.

No. 50294.

Court of Appeals of Oklahoma, Division 1.

June 21, 1977.

Rehearing Denied July 12, 1977.

Released for Publication By Order of Court of Appeals Aug. 4, 1977.

Pain & Garland by Leslie Pain Anadarko, for appellants.

John P. Buzbee, Anadarko, for appellee.

BOX, Judge.

An appeal from the admission to probate of the last will and testament of Charles E. Bailess.

Charles was married to Ada Belle Bailess. Charles and Ada Belle executed a mutual will on July 25, 1972. Under the terms of this will, $750.00 was left to Daisy A. Fisher, the sister of Charles and one of the contestants herein. Charles' other sister, Mary Ports, who is also a contestant, was not remembered under the will. Vernie M. Bailess, the nephew of Charles and proponent of the will, was left a specific bequest of Charles' Waltham watch, chain and knife thereon plus one-third of the residue of the estate. Other bequests of the will need not be delineated.

Ada Belle predeceased Charles and the mutual will was admitted to probate her estate. On February 24, 1975, after the death of Ada Belle, Charles executed a revocation of all former wills and codicils made by him during his lifetime. A new will was not executed. Charles died on November 18, 1975.

On December 5, Daisy Fisher filed a petition for letters of administration. Vernie Bailess filed a petition for the probate of the mutual will on December 15. Mary Ports and Daisy Fisher filed a contest to the probate of the will on August 20, 1976. The contestants alleged the will was revoked by Charles by virtue of the written revocation. The proponent of the will, Vernie Bailess, contended the decedent lacked testamentary capacity on February 24, 1975, the date of the revocation, and the

will was, therefore, still in force and effect at the time of Charles' death.

After a hearing on testamentary capacity at the time of revocation, the trial judge concluded that the revocation was invalid because Charles E. Bailess was incompetent at that time and ordered the will be admitted to probate. The sole issue to be determined on appeal is whether the holding of the trial judge that Charles Bailess lacked testamentary capacity on the date of revocation was supported by the weight of the evidence. We conclude that it was.

The same rules which apply to testamentary capacity to make a will also apply to testamentary capacity to revoke a will, the same degree of mental capacity being necessary in both instances. See *In re Sebben's Estate,* 151 Colo. 12, 375 P.2d 516 (1962); *In re Kemper's Estate,* 157 Kan. 727, 145 P.2d 103 (1944); *In re Dougan's Estate,* 152 Or. 235, 53 P.2d 511 (1936); 95 C.J.S. Wills § 264. It is well established that the question of testamentary capacity is a question of fact and the finding of the trial court will not be disturbed on appeal unless it is clearly against the weight of the evidence. See *In re Estate of Lacy,* Okl., 431 P.2d 366; *Lynn v. Ada Lodge No. 146 of Indep. Order of Odd Fellows,* Okl., 398 P.2d 491; *In re McCurtain's Estate,* Okl., 377 P.2d 210; *Foote v. Carter,* Okl., 357 P.2d 1000; *In re Marinoff's Estate,* Okl., 297 P.2d 387; *Hutchings v. Bailey,* Okl., 290 P.2d 405; *Brown v. Brown,* Okl., 287 P.2d 913; *In re Holmes' Estate,* Okl., 270 P.2d 320.

The trial judge compiled extensive findings of fact and conclusions of law. The following is a brief summary of the evidence which supports the finding of incapacity and is not meant to include all the testimony exacted from the various witnesses.

During the period in question, Charles Bailess was under medication and suffered from hardening of the arteries.

The question of testamentary capacity is one of fact but not necessarily con-

fined to the exact time of the execution of the testamentary instrument. Evidence of the testator's mental status, together with his appearance, conduct, acts, habits and conversation, both before and after execution is relevant. See *Estate of Samochee,* Okl., 542 P.2d 498; *In re Estate of Bennight,* Okl., 503 P.2d 203; *Albright v. Miller,* Okl., 467 P.2d 475; *Brummett v. King,* 207 Okl. 607, 251 P.2d 1062.

Mattie First was the neighbor of Charles Bailess for over ten years. She testified that during the last few months prior to June, 1974, decedent had become hostile toward his wife and would not shave nor change his clothes regularly. Ms. First visited Charles in 1974 while he was in the rest home and on several visits Charles would not recognize her and would tell her about shopping trips downtown which, in fact, never occurred.

Thelma Blackburn, L.P.N. and Administrator of Friendship Manor Nursing Home, observed decedent in the home until he was taken out on January 30, 1975. While in the rest home, decedent appeared confused and disoriented as to times and places and he could not shave nor bathe himself. It was her opinion he was incompetent, would not know the extent of his property and was never rational. She further testified that Charles believed he owned the building and the attendants were his employees.

During February of 1975, decedent stayed at Mrs. Fowler's home. Mrs. Fowler, presently Sudie Gilleland, and her husband Morris Gilleland, testified that while decedent was at Mrs. Fowler's he was unable to shave or dress himself, could not remember when to take medication, believed he was in California, thought his wife was being held captive by someone when, in fact, she had died in December of 1974.

On February 11, 1975 decedent was examined by Dr. A. C. Roberson to determine whether decedent was competent to execute legal documents. Prior to this visit, decedent was not a patient of Dr. Roberson. Dr. Roberson's opinion was that decedent was mentally competent but at times was disoriented and easily excited. On Febru-

ary 21, Dr. Roberson saw decedent again at which time he seemed oriented.

Dr. L. O. Short had seen Charles Bailess as a patient from 1974 to 1975 and treated him for hardening of the arteries. Dr. Short opined that decedent was incompetent.

■ A petition for guardianship of Charles Bailess was filed January 28, 1975 and ten days after the execution of the revocation, decedent was declared incompetent. Although not conclusive on the issue of decedent's testamentary incapacity, it is to be considered. See *In re Estate of Foley,* Okl.App., 531 P.2d 1075; *In re Wheeling's Estate,* 198 Okl. 81, 175 P.2d 317.

■ Charles and Ada Belle Bailess had drafted a prior mutual will in 1967. This court has previously held that a prior will was admissible in a case that was primarily concerned with undue influence. See *In re Estate of Foley,* supra. In the instant case, the 1967 will could be considered tending to prove the probability that testator's final will in 1972 coincided with his earlier conceptions and the subsequent revocation was the product of mental incapacity. See also *Ambler v. Archer,* 230 Ga. 281, 196 S.E.2d 858 (1973); *Burns v. Schmidt,* 22 Ill.2d 47, 174 N.E.2d 188 (1961); *Storbeck v. Fridley,* 240 Iowa 879, 38 N.W.2d 163 (1949); *In re Estate of Brink,* 11 Mich.App. 413, 161 N.W.2d 438 (1968); *In re Forsythe's Estate,* 221 Minn. 303, 22 N.W.2d 19 (1946); *In re Wahl's Estate,* 151 Neb. 812, 39 N.W.2d 783 (1949); 94 C.J.S. Wills § 56.

According to Daisy Fisher, decedent believed Vernie Bailess was stealing his money. It is apparent that this was a delusion inasmuch as there was no evidence of any funds wrongfully received by Vernie Bailess. See *Lynn v. Ada Lodge No. 146 of Indep. Order of Odd Fellows,* supra; *In re Mason's Estate,* 185 Okl. 278, 91 P.2d 657.

After reviewing the record, evidence and testimony of the various witnesses, we hold that the findings of fact and conclusions of law were not against the weight of the evidence. Accordingly, the trial court's holding that Charles E. Bailess was mental-

ly incompetent to effect a revocation of his will and order admitting the 1972 will to probate is hereby affirmed.

AFFIRMED.

REYNOLDS, P. J., and ROMANG, J., concur.